ALPHA MILLS v. WATERTOWN STEAM ENGINE COMPANY.

*Action for Damages—False Warranty—Sale of Personal Property—Principal and Agent—Issues—Discovery of Fraud—Statute of Limitations—Damages.*

1. Where the ground of a motion to dismiss an action for want of service upon the defendant was that the person upon whom service of the summons was made was not the agent of defendant, and the jury, in the trial of the action, found an issue establishing such agency, the refusal of the motion to dismiss by the trial Judge who, at the time it was made, passed on the fact, cannot be excepted to on appeal.

2. The refusal of a new trial upon the ground that the verdict is against the weight of the evidence is not reviewable on appeal.

3. Where a person, as agent of another, contracts to sell an engine of a certain kind and knowingly delivers an inferior one, the purchaser may retain the engine and sue both principal and agent for damages.

4. An agent authorized to sell is authorized to make a warranty.

5. It is sufficient if the issues submitted on the trial of an action, embrace the substantial contention of the parties in such manner as not to deprive either party of the benefit of a substantial right.

6. Where it was admitted that B sold an engine to plaintiff and in an action against B and W for damages, on false warranty, the jury find on a distinct issue that B was W's agent in the transaction, the refusal to submit an issue as to whether or not there was a sale by W was not error.

7. The amendment, by Ch. 269, Acts of 1889, of Section 155 (9) of *The Code*, by which the words "in cases which were heretofore solely cognizable by Courts of Equity" were stricken out, applies to an action for a false warranty in a sale made before the amendment, so that, in actions where relief on the ground of fraud is sought, the cause of action shall not be deemed to have accrued until the discovery of the fraud complained of.

8. A foreign corporation cannot set up the statute of limitations in bar of an action for false warranty.

9. Where, in the trial of an action for false warranty, a dispute exists as to when the plaintiff first knew of the fraud, the question as to whether the action is barred by the Statute of Limitations is one of fact for the jury.

10. A plaintiff in an action for false warranty in the sale of an engine is entitled only to damages naturally arising from the fraud and not to interest on his payments nor to amounts paid for insurance.

CIVIL ACTION, brought by plaintiff against the Watertown Steam Engine Company (a foreign corporation) and its agents, Brem & McDowell, for damages arising from its false warranty and deceit in the sale of an engine, the manufacture of the Watertown Steam Engine Company.

ALPHA MILLS *v.* ENGINE COMPANY.

The following is a copy of the offer for the sale of the engine which was bought from the defendants by the plaintiff:

"Office of Brem & McDowell, Machinery, Mining Supplies and Safes. Agents for Liddell & Co., Manufacturers of 'Boss' Cotton Presses, Saw Mills, Shafting, Pulleys, Hangers, &c. Agents for Watertown Engines. Cleveland & Hardwick Engines. The Pratt Improved Cotton Gin. Corn and Flour Mills. Victor Wagon and Platform Scales. Emerson, Smith & Co. Planer and Solid Tooth Circular Saws. Marvin's Fire Proof Safes. Steam and Water Fittings and all sizes of Wrought Iron Pipe and Rubber and Leather Belting, Constantly on Hand.

"Charlotte, N. C., April 9th, 1888.

"E. K. P. Osborne, Esq., President Alpha Mills—Dear Sir: We will sell to your Mill the following machinery, at prices given:

| | |
|---|---:|
| One Watertown automatic cut off engine, 18x28 cylinder 150 H. P. nominal, or 155 H. P. cutting off at half stroke 70 lbs steam | $1,500 00 |
| 80 horse still boilers, at $843 each | 1,686 00 |
| No. 3 pump | 175 00 |
| No. 11 heater | 250 00 |
| Steam and water connection | 100 00 |
| Machinist's time | 30 00 |
| Freight about | 43 00 |
| | $4,154 00 |

"—With pump and heater.

Yours respectfully, BREM & McDOWELL.

"Accepted: E. K. P. Osborne, Pres."

The engine was delivered on December 12, 1888, and was set up on February 5th, 1889, and suit was brought on the 3d January, 1892.

There was much evidence offered and many exceptions taken to the admission and exclusion of testimony and to the refusal to give instructions asked for and to the charge as given, all of which is set out in a voluminous record. The material facts and exceptions are sufficiently stated in the opinion of Associate Justice FURCHES.

The issues submitted and the responses thereto are as follows:

1. Did Brem & McDowell warrant the engine to be a 150 horse-power engine of the manufacture of the Watertown Steam Engine Company? Answer. Yes.

2. At the time of said warranty were Brem & McDowell the agents of the Watertown Steam Engine Company for sale of said engine? Answer. Yes.

3. Did the Watertown Steam Engine Company, through Brem & McDowell as its agents, warrant that the engine sold to the plaintiff, The Alpha Mills, was a 150 horse-power engine of the manufacture of said Watertown Steam Engine Company? Answer. Yes.

4. Was the said engine a 150 horse-power engine of the manufacture of said Company? Answer. No.

5. Did Brem & McDowell represent to the plaintiff that the engine was a 150 horse-power engine of the manufacture of said Company with the purpose of inducing the plaintiff to buy the engine? Answer. Yes.

6. Was said representation true? Answer. No.

7. Did Brem & McDowell know, or have reason to believe, at the time of said representation, that said engine was not a 150 horse-power engine of the make of said Company? Answer. Yes, but not with fraudulent intent.

8. Was plaintiff induced by said representation to buy the engine? Answer. Yes.

9. At the time of said representation were Brem &

McDowell the agents of the Watertown Steam Engine Company? Answer. Yes.

10. Is plaintiff's cause of action barred by the Statute of Limitations as to Brem & McDowell? Answer. No.

11. Is the plaintiff's cause of action barred by the Statute of Limitations as to Watertown Steam Engine Company? Answer. No.

12. What are the plaintiff's damages? Answer. $2,023.74.

Judgment was rendered by the court in favor of the plaintiff.

*Messrs. Burwell, Walker & Cansler,* for plaintiff.

*Messrs. Geo. E. Wilson* and *George F. Bason,* for Steam Engine Co., appellant.

*Messrs. Jones & Tillett,* for the defendants Brem & McDowell (appellants).

FURCHES, J.: This is an action for damages upon an alleged false warranty in the sale of a steam engine in which plaintiffs recovered and defendants appeal, and file 44 exceptions to the ruling of the Court. We do not expect to take up and discuss these exceptions *seriatim,* but only to discuss such of them as will dispose of the case on appeal, as many of them will in all probability not arise again.

The defendants moved to dismiss the action for want of due service. This motion had been made and passed upon some terms ago, upon affidavit, as to whether the defendants Brem & McDowell were agents of the other defendant in making the sale complained of. And if there had been any reason for doubting the correctness of the finding of the Court at that time ( and we do not see that there was ) there certainly is none now, when this question has been submitted to a jury and found that they were the agents of

116—51

the Watertown Steam Engine Company. This motion is overruled.

Defendants then moved for judgment on the findings of the jury (*non obstante*, we suppose). This exception was not argued and we suppose was virtually abandoned. But if it was not, we see no ground upon which it can be sustained, and it is overruled.

Exhibit 5 contains the contract for the sale of the engine, which in our opinion shows that Brem & McDowell acted as agents of the Watertown Company in making the sale. And that it also constitutes a sale with warranty. *Thomas* v. *Simpson*, 80 N. C., 4; *Love* v. *Miller*, 104 N. C., 582. And that plaintiffs might retain the engine and have an action against defendants for damages. *Lewis* v. *Rountree*, 78 N. C., 323; *McKinnon* v. *McIntosh*, 98 N. C., 89. An agent authorized to sell is authorized to make a warranty. *Hunter* v. *Jameson*, 6 Ired., 252. We do not think the fact that Brem was a member of the plaintiff corporation benefits the defendants. If he acted as the agent of the Watertown Company in making this sale—was in its employ and pay—he could not at the same time be acting for the plaintiff corporation. And thus acting, it is not to be supposed that he would give plaintiff information injurious to his principal, and which would likely prevent a sale of its property. *McKoy* v. *Hancock*, 38 N. J. Eq., 161; *Hickman* v. *Green*, 27 S. W. Rep., 440; *Bank* v. *Harris*, 118 Mass., 147; *Allen* v. *Railroad*, 150 Mass., 200. It has been held that if the agent did not know of the defects at the time of making the sale, he would not be guilty of a moral fraud, but still it would be a legal fraud. *Peebles* v. *Guano Co.*, 77 N. C., 233. But in this case the jury, by the 7th issue, find that the agents had knowledge at the time of the sale, that the engine was not a 150 H. P.

engine.   So it is not necessary to invoke the rule in the case of *Peebles* v. *Guano Co., supra.*

The defendants insist that they were entitled to their first issue as to whether there was a sale or not.  And ordinarily it seems to us that this would be so.   But in this case it seems not to be denied that there was a sale of an engine by Brem & McDowell to the plaintiff.   And we suppose defendants insisted on this issue upon the ground that Brem & McDowell were not the agents of the Watertown Co. And as this was submitted as a distinct issue and found that they were, we think this supplies any apparent necessity for this issue.   There has been much discussion (to be found in our reports) as to what are proper issues.   But we think it has been finally settled that if the issues as submitted embrace the substantial contention of the parties, in such manner as not to deprive either party of the benefit of a substantial right, this is sufficient.   And applying this rule we do not see that defendants were prejudiced on account of the Court's not submitting this issue, and must overrule this exception.

Defendants contend that plaintiff's action is barred by the statute of limitation.  And as to the defendants Brem & McDowell, we would hold this to be so, under the cases of *Blount* v. *Parker*, 78 N. C., 128, and *Jaffray* v. *Bear*, 103 N. C., 165.   But for the Act of 1889, Ch. 269, amending sub-section 9, section 155, of *The Code*.   This amendment strikes out of section 155 of *The Code*, that part upon which the decision in *Blount* v. *Parker* and *Jaffray* v. *Bear* was put.   This amendment leaves all actions subject to the same rule, whether they were heretofore cognizable solely in courts of equity or not, and makes all actions come under the same rule as if they had been originally cognizable in courts of equity.   And the jury having found the issue of fraud in favor of plaintiffs, it makes this point in the case,

as to defendants Brem & McDowell, depend upon the time when the fraud was discovered by plaintiffs, that is, when they first discovered that the engine was not a 150 H. P. engine. As to the other defendant, the Watertown Company, we think a different rule obtains. This defendant is a foreign corporation. Its citizenship is in New York. In matters of litigation it has the right to avail itself of this fact, as is often done in cases of removal from State to Federal Courts. And we see no reason why it should not be subject to the same rule that individuals are, who are citizens of other States. We therefore do not think the statute of limitations applies to them, whether the fraud was discovered within three years before the commencement of the action or not. *Code*, Sec. 162 ; *Grist* v. *Williams*, 111 N. C., 53. The defendants Brem & McDowell contend that as the Act of 1889 was passed after the sale complained of was made, the amendment does not apply in this case, and that the law as it stood before the amendment must govern. We do not agree to this contention. The statute of limitation is no satisfaction of plaintiff's demand. It is only a bar when set up to the action of the Court. It does not act on the rights of the parties, but only affects the remedy. It is created by the Legislature and can be removed by the Legislature. This is certainly so where it had not run so as to become a bar. As it affects no vested rights, there is no reason for holding that it is unconstitutional. And that is the only ground we see, upon which defendant's contention can be sustained.

This brings us to the consideration of His Honor's charge upon the Statute of Limitations. The question of the Statute of Limitations is a mixed question of fact and law. And it is true, as stated by His Honor, if there is no dispute as to facts, then it becomes a question of law and the Court should instruct the jury as to their verdict. But where

there are disputed facts, as to when it started to run, then it is the duty of the Court to submit that question to the jury. In this case it depended (as to Brem & McDowell) as to when plaintiff first had knowledge that the engine sold it was not a 150 H. P. engine. It was in evidence that plaintiffs more than three years before the commencement of this action, had in its possession a catalogue of The Watertown Co., which tended to show that the engine sold plaintiff was not a 150 H. P. engine. What Ward said about it, and other evidence which tended to show knowledge, was, at least, enough to make it a disputed question of fact. And this being so we think it was error in the Court to instruct the jury that from all the evidence in the case they should find that the Statute of Limitations had not run. We also think there was error in his charge upon the question of damages. Plaintiff gave in evidence the cost of transportation and putting down both engines. And defendants contend that under His Honor's instructions the jury charged them with this expense for both engines. If this is so, it seems to us it is clearly wrong. If plaintiff had gotten the last engine first, it would have been compelled to have borne this expense. Why then charge it to defendant? If defendants are liable, it should only be for the expense of the defective engine. It may be the defendants were not charged for both by the jury. But we have examined His Honor's charge, and can no where find that they were instructed as to this matter. And as the evidence was allowed and they were not instructed as to it, we think it probable, indeed most likely, that the jury did charge defendants with both. We also think there were other errors in His Honor's charge upon the question of damages. It was too broad. The rule in cases like this, as we understand it, is to allow such damages as naturally arise from the false warranty, but not for every-

thing that may result therefrom.  *Ashe* v. *DeRosset*, 5 Jones, 301.   And we cannot see how such things as interest and insurance could have been in the minds of the contracting parties, or can be said to grow out of the breach of contract between the parties.   Would not plaintiffs have had to pay interest and insurance, whether there was a breach of this contract or not ?   And did this in any way depend upon this contract between plaintiffs and defendants ? These and any other matters that could not have been in the minds of the contracting parties, and did not arise from the breach of warranty, should be eliminated from the question of damages.

There are other exceptions in the case, which we do not think necessary to pass upon now, as they will likely not arise on a new trial.   But for the errors pointed out we are of the opinion there should be a new trial.

New Trial.