## 7543.   NAPIER v. STRONG.

1. While parol evidence is not admissible to add to, take from, or vary the terms of a written agreement, the terms of an admitted collateral undertaking between the parties, which the writing does not purport to contain, may be proved by parol, if not inconsistent with the writing.

2. A plaintiff must recover upon the cause of action as laid in the petition; and a verdict in his favor is illegal when the evidence fails to support the cause declared on, even though a different cause of action may appear from testimony admitted without objection.  But evidence, admitted without objection, which supports what is in fact the same cause of action, although it might have been excluded on objection, may be sufficient to authorize a recovery, if, under the facts of the case, the petition could by amendment have been so conformed to the proof as to render such testimony relevant.

3. Though it be shown that a special agent had authority as such to effect a fully consummated sale of certain property, no presumption arises therefrom of continuing authority whereby at a date long subsequent to the date of the sale he would be authorized to make an independent and supplemental agreement relating to the same subject-matter.

4. The evidence warranted the verdict, and the judge did not err in overruling the motion for a new trial.

DECIDED FEBRUARY 16, 1917.

Action on contract; from city court of Macon—Judge Hodges. April 28, 1916.

Mrs. M. L. Strong brought suit against Mrs. D. S. Napier, alleging damages in the sum of $800, on account of an alleged breach of contract relating to a policy of insurance bought by her of the defendant.   It appears that Mrs. Napier sold to Mrs. Strong a house and lot in Macon, taking installment notes for the purchase-money and giving bond for title, obligating the seller to execute title upon the payment of the notes.   All the negotiations and transactions involved in the sale, except the execution of the bond for title, were between E. Tris Napier, husband of the defendant,

26

and J. B. Strong, husband of the plaintiff; and when the trade was completed the parties to this case were not present. The bond for title had been prepared and signed by Mrs. Napier three days previously, to wit, on February 25, 1911, and carried by her husband to his office, where the sale was concluded on February 28, 1911. At the time of the sale Mrs. Napier held a fire-insurance policy for $800 on the house in question. The policy on its face covered a period of five years, beginning May 25, 1909, and therefore had been running one and three-quarters years and still had three and one-quarter years to run. In the trade as made by the husbands of the parties it was agreed that the purchaser of the house and lot should also· take over the unexpired term of the insurance policy, by paying the amount of the unearned premium, and should leave the policy in the possession of E. Tris Napier to protect Mrs. Napier as to the purchase-price of the property sold. This was done, and in furtherance of this agreement a loss-payable clause was entered upon the policy. The plaintiff alleged in her petition that in consideration of the sale of the property insured and of the payment by her to ·the defendant of the unearned premium on the policy, the defendant agreed as follows: (1) to keep the property insured in the sum of $800 as long as she (the defendant) had an interest in the property; (2) to cause other insurance in that sum to be issued if the existing policy should lapse or be discontinued; and (3) in any event to notify the· purchaser should the property become uninsured.

It was shown that nearly three years after this transaction, to wit, on January 27, 1914, the insurance company cancelled the policy and returned to Mr. E. Tris Napier the unearned portion of the premium, amounting to $1.60, which was retained by him, and that no notice of the cancellation was ever given to the plaintiff. The policy, as actually written, would have expired at the end of four months from the ·time it was cancelled; that is, on May 25, 1914. In January, 1915, the property was destroyed by fire. The plaintiff introduced only one witness, J. B. Strong, her husband and agent. The substance of his testimony was that when he bought the policy from the defendant's agent, E. Tris Napier, the latter told him that the policy had four and a half years to run, when in fact it had only three and a quarter years to run, and that had the policy remained in force for four and a half

years, the property would have been insured at the time of the fire. J. B. Strong further testified as follows: "I talked to Mr. Napier about this insurance after I bought the place and before the fire. I happened to be present after he had sold the last note. He sold it to a sister of his—the only way I know is by him calling her sister; I don't know her name. I had a conversation with him at that time. I told him that I would like to get the insurance papers, as I had been there once before, and he said he was holding them to make him doubly sure of his money. I told him I wanted to strengthen my insurance, as they were building up all around me and I was afraid of fire and would like to increase my insurance. He said that he would attend to that. And again I asked him for it, as I had a good profit in the place and wanted to trade, and I called on him and he said 'Call again, I am busy now.' And I called later and he wheeled around and struck his fist on the desk, and said 'I am going to hold you to our first trade.' And then I asked him if I could get the fire-insurance policy, to have it strengthened, and he said he would look after that." Whether this latter conversation was prior to the cancellation of the policy, or subsequent, the evidence does not disclose. A motion for nonsuit having been refused, evidence was introduced for the defendant; and the jury found for the plaintiff in the amount sued for. The trial judge refused to grant a new trial, and the defendant excepted.

*Ryals & Anderson,* for plaintiff in error.

*E. C. Powers, W. D. McNeil,* contra.

JENKINS, J. 1. It is ably contended by counsel for the plaintiff in error that no parol evidence regarding the insurance transaction should have been admitted, for the reason that the sale of the house and lot and the sale of the unexpired term of the insurance policy were all parts of the same transaction, as shown by the petition; and that since the bond for titles is in writing, and by law required so to be, it can not be added to or varied by parol evidence. No principle of law is better settled than that which prohibits the admission of parol evidence to add to, take from, or vary the terms of a written contract; and in those cases where the contract must, under the statute of frauds, be in writing, it has been held that such a contract can not be modified by a parol agreement, even if subsequently made. See *Willis* v. *Fields,* 132 *Ga.*

242 (63 S. E. 828). The principle invoked, however, can not have proper application where the writing does not purport to contain the stipulations of an admitted collateral undertaking. Under the facts of this case, while the bond for title appears complete and unambiguous on its face, it in no wise purports to cover the admitted sale of the policy of insurance, as an incident to the sale of the realty. Since the answer itself admits an executed sale of the policy, not embraced in the writing, the sale of the policy must necessarily have been effected by a collateral agreement, and the plaintiff should be entitled to allege and prove the terms thereof unless they were inconsistent with the writing.

In order to render parol evidence admissible for the purpose of making complete an incomplete contract, the fact that the contract is incomplete need not necessarily appear upon its face. The surrounding facts and circumstances of a contract are always proper subjects of proof (Civil Code, § 5792), and when from them or the admission of parties it is made to appear that the writing does not embrace all of the agreements, then collateral undertakings not inconsistent with the writing can be shown by parol. *Forsyth Mfg. Co.* v. *Castlen,* 112 *Ga.* 199 (6), 206 (37 S. E. 485, 81 Am. St. R. 28). In the present case the obligation assumed by the alleged parol undertaking of the defendant is not a new obligation added to the agreement made by the bond governing the sale of the realty, but grows out of and relates to the incidental sale of the policy of insurance. Section 5791 of the Civil Code provides: "If the writing does not purport to contain all the stipulations of the contract, parol evidence is admissible to prove other portions thereof not inconsistent with the writing; so collateral undertakings between parties of the same part among themselves would not properly be looked for in the writing." See also *Carter* v. *Griffin,* 114 *Ga.* 321 (40 S. E. 290) ; *McCommons* v. *Williams,* 131 *Ga.* 313 (62 S. E. 230) ; *Shiels* v. *Stark,* 14 *Ga.* 429 (4).

2. The evidence for the plaintiff having been accepted by the jury in its verdict, this court considers itself bound thereby. *Davis* v. *Kirkland,* 1 *Ga. App.* 5 (58 S. E. 209) ; *Stricklin* v. *Crawley,* 1 *Ga. App.* 139 (58 S. E. 215) ; *Charles* v. *Brooker,* 1 *Ga. App* 219 (58 S. E. 218) ; *Daughtry* v. *S. & S. Ry. Co.,* 1 *Ga. App.* 393 (58 S. E. 230). The contention, however, as to whether the evidence in support of the petition conforms to the allegations therein

made is one of law, and constitutes one of the questions we are
called upon to determine. It is an elementary principle that there
must be no variance between the cause of action declared upon and
that proved. The rule is founded upon good reason; for not only
is the opposite party entitled to have the basis of the plaintiff's con-
tention distinctly and specifically set forth, but good pleading
serves the additional purpose of preserving an accurate record of
the cause of action as a protection against another proceeding
based upon the same cause.

In the present case Mrs. Strong brought an action for damages
alleged to have been sustained on account of a breach of contract
on the part of Mrs. Napier, whereby the latter had agreed upon
the purchase from her of the insurance policy, (1) to keep the
property insured in the sum of $800 as long as she (the defendant)
had an interest in the property; (2) to cause other insurance in
that sum to be issued in case the existing policy should lapse or
be discontinued; and (3) in any event to notify the purchaser
should the property become uninsured. The sole proof, however,
offered to sustain such contract and to show its breach was to the
effect that when the sale of the policy of insurance was effected,
it was understood and agreed by the parties to the sale that the
policy had four and a half years to run, whereas in fact the unex-
pired period was only three and a quarter years, and that the prop-
erty insured was destroyed by fire during the interval. It is mani-
fest that there was here such a lack of correspondence between the
allegations and the proof as would have rendered such evidence in-
admissible, upon objection made on that ground. And if such tes-
timony related to a new and distinct cause of action from that al-
leged in the petition, even its admission without objection would
not suffice to sustain the verdict. In the case of *Central Railroad
Co.* v. *Cooper,* 95 *Ga.* 406 (22 S. E. 549), the court said: "No
plaintiff can recover upon a cause of action, however just or well
sustained by proof, which is totally distinct and different from that
alleged in his declaration, and this is so although palpably irrele-
vant evidence may have been received without objection." In
*Burdette* v. *Crawford,* 125 *Ga.* 577 (54 S. E. 677), it is held:
"The plaintiff must recover upon the cause of action laid in the
declaration; and a verdict for the defendant is required when the
cause of action thus laid is not proved, although another cause of

action in favor of the plaintiff against the defendant may appear from the defendant's testimony." It will be noted, however, that in each of the cases just quoted from, the unauthorized evidence which was admitted (in the first case certainly without objection) was for the purpose of proving a new and distinct cause of action from that sued on. A different rule would apply when evidence admitted without objection could have been rejected as not conforming to the allegations as laid, but in fact related to the cause of action declared on. In such a case our courts have repeatedly held that a party waives his objection to the pleadings by allowing such evidence to go to the jury without objection; the reason for this just rule in such a case evidently being that had objection been made, the party tendering such evidence might have amended his pleadings so as to conform thereto. One of the principal functions of amendments is to conserve this right. *Haiman* v. *Moses,* 39 *Ga.* 708 (3); *Savannah, F. & W. Ry.* v. *Barber,* 71 *Ga.* 644 (2 a); *Gainesville & Northwestern R. Co.* v. *Galloway,* 17 *Ga. App.* 702 (4) (87 S. E. 1093).

It is, therefore, clear that the proposition before us resolves itself into the question of whether the evidence for Mrs. Strong related to the cause of action alleged in her petition, or whether it attempted to prove a new and distinct cause from that alleged. If the former be true, then the jury had a right to consider the testimony which was admitted without objection, but if it related to a different cause of action, then, no matter how admitted, it could not support a legal verdict in the plaintiff's behalf. There has been an admitted lack of entire harmony in the decisions of our courts upon the difficult subject here involved. The settled rule upon this subject seems to have been admirably stated by Chief Justice Simmons, in the case of *City of Columbus* v. *Anglin,* 120 *Ga.* 785, 793 (48 S. E. 218), in which he says: "He may allege additional facts to show the existence of his primary right, as long as he does not undertake to set up another and distinct right. And he may allege additional facts to show that the defendant has been guilty of the alleged violation of plaintiff's right. If there is substantial identity of wrong (which necessarily includes identity of the right violated) there is substantial identity of cause of action. This identity is not the same as that required between allegata and probata. A party is required to prove his material

and essential allegations as he has alleged them, and, in the absence of amendment, may fail because of a variance, though the facts proved show substantially the same cause of action shown by the facts alleged. The two sets of facts may show substantially the same cause of action, and yet the proof of one will not sustain the allegation of the other. Not so with the test of an amendment. To avoid a variance is not the least important of the offices of an amendment. Davis v. Hill, 41 N. H. 329. So long as the facts added by the amendment, however different they may be from those alleged in the original petition, show substantially the same wrong in respect to the same transaction, the amendment is not objectionable as adding a new and distinct cause of action." In this opinion the early rule laid down by Judge Lumpkin in *Maxwell* v. *Harrison*, 8. *Ga.* 61 (52 Am. D. 385), is reverted to and approvingly quoted as follows: "The true criterion for determining whether an amendment is admissible, we take to be this —whether the amendment proposed is another cause of controversy, or whether it is the same contract or injury, and a mere permission to lay it in a manner which the plaintiff considers will best correspond with the nature of his complaint, and with his proof and the merits of his case. For, while the plaintiff can not introduce an entirely new cause of action, he may nevertheless add a new count, substantially different from the declaration, provided he adheres to the original cause of action." The identity of the cause of action can in any case be best determined by applying the test as to whether the same or a different wrong is involved. In the instant case the essential wrong complained of is the loss of the uninsured property at a time when, by the agreement of defendant, she had promised or guaranteed that the purchased policy would protect it. In the case of *City of Columbus* v. *Anglin,* supra, the following language is used: "A number of tests have been suggested for determining whether an amendment adds a new cause of action. One general test is said to be, 'whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope and varying phases of the testimony.' 1 Enc. Pl. & Pr. 564. Other tests, some of them admittedly fallible, have been suggested in different cases, as (1) whether the original petition and the amendment would be sub-

ject to the same plea (Goddard *v.* Perkins, 9 N. H. 488); (2)
whether the same evidence would support both (Scovill *v.* Glàsner,
79 Mo. 449); (3) whether the same measure of damages is appli-
cable to both (Hurst *v.* Railway, 84 Mich. 539 [48 N. W. 44]);
(4) whether both could have been pleaded cumulatively in the
same count (Richardson *v.* Fenner, 10 La. Ann. 600); (5) whether
an adjudication upon one would bar a suit under the other (Davis
*v.* Railroad Co., 110 N. Y. 646 [17 N. E. 733]). Of these the last
mentioned is probably the best and most useful, though even it
comes back at last to the question whether the cause of action is
the same." Applying these tests, although in a measure they be
admittedly fallible, the cause of action alleged and the one proved
in the case at bar would appear identical.

3. The evidence shows that at a date not named, but manifestly
long subsequent to the consummation of the sale of the house and
lot and of the insurance policy, the agent of the purchaser made
request of the agent who had negotiated the sale of the real estate
and of the insurance, for the surrender of the policy, in order that
it might be "strengthened," and that the latter replied that he
would "look after that." We do not think the conversation as here
outlined was sufficient to constitute a contract which could even be
the basis of an action for a failure to increase the insurance, were
the present suit maintained for that purpose. The subject-matter
of the alleged agreement was in no wise entered into as to the
period, rate, and amount of the insurance; and such would have
been necessary in order to render a promise of this sort binding.
But in no event do we think that such an agreement on the part
of E. Tris Napier would bind his alleged principal, Mrs. Napier,
unless his authority so to promise be specifically shown. Under the
evidence it appears that E. Tris Napier was the special agent of
his wife to deliver the bond for title and effect a sale of the policy
of insurance. This is manifested by the testimony of the plaintiff's
agent when, at the time of the sale, he interrogated E. Tris Napier
as to whether Mrs. Napier had personally signed the bond for title
and was informed that she had. The plea and answer of the de-
fendant having itself alleged the sale and transfer of the unexpired
term of the insurance policy, thus impliedly admitting the au-
thority of her agent to make the same, the plaintiff is thus re-
lieved from proving the authority of her agent in so doing. As a

general proposition, however, those dealing with a special agent are bound to ascertain his authority; and while the agent of the defendant may have been authorized to execute a definite contract, which had been fully consummated, it does not follow that he had continuing authority to make an independent and supplemental agreement, though it might relate to the same subject-matter. The fact that E. J. Kinney, a witness for the defendant, testified that Mr. Napier was acting as agent for his wife throughout this transaction is not sufficient proof, of his authority so to act. In the case of *Neal* v. *Patten,* 40 *Ga.* 363, the court held: "A witness may state that one acted as agent, but this does not show his power to act, nor the extent of the authority;" and further the court said: "The fact that he acted as agent does not prove his power to act any more than the fact that he sold proves his power to sell." The evidence does not disclose any other proof than this of any authority on the part of defendant's agent, except what may be presumed by the admission in her answer already referred to.

It is contended by counsel for defendant in error that the entire transaction shows such agency as should bind the defendant, but, as already stated, the mere fact that another may so act does not of itself prove the authority to act. The fact that the alleged agent in this case is the husband of the principal does not in any wise alter the rule. In the case of *Mickleberry* v. *O'Neal,* 98 *Ga.* 42, 51 (25 S. E. 933), the court said: "A husband may be the agent of his wife. If he professes to act as her agent, those dealing with him are bound to inquire as to his authority to act for her." Nor can agency be proved by declarations or conduct of the alleged agent. *Americus Oil Co.* v. *Gurr,* 114 *Ga.* 624 (40 S. E. 780). Therefore we are of the opinion that the answser of E. Tris Napier to the request for the delivery of the policy for the purpose of strengthening it could in no event bind the alleged principal in the absence of proof of his authority to make the statement then made by him.

4. There is no reversible error in the portions of the charge of the court complained of. It is not good practice for the judge, in his charge, to refer to contentions of the pleadings not supported by proof, for while such instructions may correctly state the law in the abstract, the jury might reasonably be misled thereby; but we think it apparent in the present case that the caution given in

reference to such statement of the contentions made by the petition, some of which are not supported as pleaded, was sufficient to prevent the jury from being misled. The language used by him, just referred to, was as follows: "I have thus submitted to you an epitome, an outline, a synopsis of the pleadings, the contentions of the parties to the case. . . You will not take the statement on the part of the court, of the pleadings in the case, as having any evidentiary force or value whatever."

5. If, when the sale of the policy of insurance was effected, the defendant, by her agent, expressly stated that the unexpired term thereof extended for four and a half years, and accepted payment on that basis, we think the purchaser had a right to rely upon that statement as forming an integral part of the contract of purchase; it being shown that the seller retained possession of the policy, and it not appearing that the policy was present at the time. In *Burge* v. *Stroberg,* 42 *Ga.* 88, the court said: "While representations made at the time of sale may amount to fraud, the right of action on the breach exists under the law upon the contract, irrespective of such fraud on the part of the seller." See also *Terhune* v. *Dever,* 36 *Ga.* 648. Nor does it matter that such misstatements on the part of the seller were unintentionally and innocently made (*Newman* v. *Claflin Co.,* 107 *Ga.* 89, 32 S. E. 943); nor that they were made by her agent when the agent was clothed with authority to effect such sale. Alpha Mills *v.* Watertown Steam Engine Co., 116 N. C. 797 (21 S. E. 917); Darks *v.* Scudder-Gale Grocery Co., 146 Mo. App. 246 (130 S. W. 430); First National Bank *v.* Robinson, 105 Iowa, 463 (75 N. W. 334); Miller Supply Co. *v.* Limestone Mining Co., 159 Ky. 696 (167 S. W. 889); Haynor Mfg. Co. *v.* Davis, 147 N. C. 267 (61 S. E. 54, 17 L. R. A. (N. S.) 193).

Where express representations constituting a part of the contract are made by the seller as to the existence of a fact, in contradistinction to the statement of a mere opinion or judgment, the purchaser ordinarily has a right to rely thereon. Benjamin on Sales (7th ed.), § 613; *North Georgia Milling Co.* v. *Henderson Elevator Co.,* 130 *Ga.* 113 (60 S. E. 258, 24 L. R. A. (N. S.) 235); *Springer* v. *Indianapolis Brewing Co.,* 126 *Ga.* 321 (4), 323 (55 S. E. 53); *Fletcher* v. *Young,* 69 *Ga.* 591; *Moultrie Repair Co.* v. *Hill,* 120 *Ga.* 730 (48 S. E. 143); *Cook* v. *Finch,* 117 *Ga.* 541 (44

S. E. 95); *Christian* v. *Knight,* 128 *Ga.* 501 (57 S. E. 763); *Burr* v. *Atlanta Paper Co.,* 2 *Ga. App.* 52 (58 S. E. 373). And the fact that the policy appears to have been cancelled and returned to the seller, together with the unearned premium thereon, prior to the expiration of the four and a half years, does not affect the defendant's liability, where it is shown that she not only inadvertently retained the returned premium, but even failed to notify the plaintiff of such lapse or cancellation. Under the facts as outlined, the duty was certainly imposed upon her of at least giving notice to the plaintiff of such cancellation; and herein lies the strongest and most undoubted equity in her favor which the facts of the case disclose.

*Judgment affirmed. Broyles, P. J., and Bloodworth, J., concur.*